**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2198-23

IN THE MATTER OF REQUEST
FOR ADJUDICATORY HEARING
ON ACTION OF TIDELANDS
RESOURCE COUNCIL.

_____

Argued September 10, 2025 – Decided September 25, 2025

Before Judges Gummer and Paganelli.

On appeal from the New Jersey Department of Environmental Protection.

R.S. Gasiorowski argued the cause for appellant Jersey Shore Beach and Boardwalk, Inc. (Gasiorowski & Holobinko, attorneys; R.S. Gasiorowski, on the briefs).

David A. Clark argued the cause for respondent Borough of Keansburg (Dilworth Paxson LLP, attorneys; David A. Clark, of counsel and on the brief; John M. Glynn, on the brief).

Charlie A. Stegner-Freitag, Deputy Attorney General, argued the cause for respondents New Jersey Department of Environmental Protection and New Jersey Tidelands Resource Council (Matthew J. Platkin, Attorney General, attorney; Sookie Bae-Park, Assistant Attorney General, of counsel; Charlie A. Stegner-Freitag, on the brief).

PER CURIAM

Jersey Shore Beach and Boardwalk, Inc. (Jersey Shore) appeals from the Department of Environmental Protection's (DEP) denial of its request for an adjudicatory hearing. Jersey Shore sought the adjudicatory hearing to contest the Tidelands Resource Council's (TRC) approval of a grant to the Borough of Keansburg (Keansburg).[1] Because we are convinced Jersey Shore has not sustained its burden to establish the DEP's decision to deny the hearing was arbitrary, capricious or unreasonable, we affirm.

---

[1] The TRC is "within the [DEP]." N.J.S.A. 13:1B-10. The Legislature found

> and declare[d] that the [TRC] is the public body responsible for the stewardship of the State's riparian lands; that it is the responsibility of the council to determine whether applications for the lease, license, or grant of riparian lands are in the public interest; that it is the responsibility of the council to determine, in assessing applications for the lease, license, or grant of riparian lands, whether the State may have a future use for such lands; that the council must obtain the fair market value for the lease, license or grant of riparian lands.
>
> [N.J.S.A. 12:3-12.1.]

We are familiar with the parties' litigation regarding Keansburg's ongoing redevelopment efforts.[2] We glean the relevant facts from the record. According to the 1940 riparian lease, Keansburg is "the owner of lands [along Beachway Avenue] fronting on Raritan Bay." The lands are designated "on the Keansburg tax map as Block 184, former Lot 3." In 1940, the State leased those lands that were under the water to Keansburg. The lease gave Keansburg the ability to "exclude the tidewater, from so much of the lands . . . as lie under the tidewater, by filling in or otherwise improving the same." Subsequent leases allowed the site to be used as a paid public parking lot. As a result of beach-filling projects, the land increased in size and Keansburg expanded the public parking lot. In the mid-2000s, Keansburg adopted the Beachway Avenue Waterfront

---

[2] See Jersey Shore Beach & Boardwalk Co. v. Borough of Keansburg, No. A-0621-23 (App. Div. Dec. 10, 2024), certif. denied, 260 N.J. 290 (2025), wherein we affirmed the trial court's order that, among other things, established Jersey Shore had no interest in Lots 3 and 3.01; and Jersey Shore Beach & Boardwalk Co. v. Borough of Keansburg, No. A-2379-22 (App. Div. Jan. 13, 2025), wherein we affirmed the trial court's orders granting Keansburg, and related entities, summary judgment on Jersey Shore's complaint that Keansburg's Second Amended Redevelopment Plan facially violated the Public Trust Doctrine (PTD) and was improperly adopted and inconsistent with Keansburg's Master Plan. Further, we are aware of a pending appeal in Jersey Shore Beach & Boardwalk Co. v. N.J. Tidelands Resource Council, No. A-0684-24, wherein Jersey Shore contends the trial court erred in dismissing its Law Division complaint, challenging the merits of the TRC's decision to provide Keansburg with the grant.

Redevelopment Plan and declared the land adjoining Beachway Avenue as an area in need of redevelopment. Keansburg planned to sell the parking lot and allow redevelopment of the property as a mixed-use housing and commercial development.

In 2019, the TRC considered Keansburg's application for a license for property located at Block 184, New Lot 3.02. The TRC's meeting minutes noted Keansburg "recently subdivided [Lot 3], and . . . h[ad] a grant application for this parcel, but the grant application c[ould no]t move forward until [Keansburg] resolve[d a] back rent issue for the license."

Further, the minutes reflect Jersey Shore's counsel and its principal appeared at the hearing and objected to the approval of the license. Counsel stated Jersey Shore's "objection [wa]s not to the continued use of this property for public parking or public use . . . access to the beach." However, Jersey Shore objected to the "interim step." Counsel noted Keansburg did "not intend to continue to utilize this property. . . . [Instead,] if [it] secure[d] a grant," it would "sell the property for private development." Thus, Jersey Shore requested "public use" conditions be imposed on the license if approved. Jersey Shore noted it would address Keansburg's grant application when it was filed. The

A-2198-23

TRC voted to approve a "license subject to the public use provisions specifically allowing for . . . paid public parking."

On December 6, 2022, the TRC considered Keansburg's application "for a riparian grant to obtain title to Lot 3.02," and clear the tidelands interest to 3.02. The DEP noted only Jersey Shore's counsel attended the meeting and objected to the riparian grant. The TRC approved the grant.

On April 20, 2023, Jersey Shore requested an adjudicatory hearing to challenge the grant. Jersey Shore stated the grant should either be denied "or alternatively include a permanent deed restriction on future use of the property as anything other than a public parking lot so as to continue to comply with the [s]tatutory and [c]ommon [l]aw [PTD]." In addition, in an accompanying letter, Jersey Shore stated it was relying upon N.J.A.C. 7:14A-17.1 to -17.3[3] to establish its right to an adjudicatory hearing.

---

[3] The DEP and Keansburg note the cited code is part of the New Jersey Pollutant Discharge Elimination System (NJPDES), and they agree the code is not pertinent to the TRC's or the DEP's decisions in this matter. Jersey Shore has not argued the code's application on appeal; therefore, the argument is waived. See N.J. Dep't of Env't Prot. v. Alloway Twp., 438 N.J. Super. 501, 505 n.2 (App. Div. 2015) ("An issue that is not briefed is deemed waived upon appeal.").

A-2198-23

Keansburg opposed Jersey Shore's request contending it was procedurally flawed and should be denied. Keansburg asserted "the regulations cited by Jersey Shore d[id] not support Jersey Shore's request for relief."

On February 7, 2024, the DEP denied Jersey Shore's request for an adjudicatory hearing. The DEP explained:

> For parties other than the applicant or the agency to have standing, they must demonstrate: (1) a right to a hearing under the applicable statute, or (2) a "particularized property interest" of constitutional significance. [N.J.S.A. 52:14B-3.2]; see also In re Freshwater Wetlands Statewide Gen. Permits, 185 N.J. 452, 463-64 (2006). The standing requirement exists, in part, to ensure permit application processing is not bogged down by time-consuming and costly hearings which consume substantial public and private resources. In re Riverview Dev., LLC, 411 N.J. Super. 409, 424 (App. Div. 2010).
>
> [(Citations reformatted).]

Further, the DEP stated Jersey Shore sought:

> [A] hearing on a TRC [g]rant issued pursuant to N.J.S.A. 12:3-1 to -28 and N.J.S.A. 13:1B-13 to -13.14 (Tidelands Act). The Tidelands Act does not grant statutory hearing rights to third party objectors. Absent a statutory provision that expressly confers a right to a hearing, an administrative agency cannot create such a right by mere regulation. . . . [Jersey Shore] has identified the adjudicatory hearing provision of the NJPDES Rules, N.J.A.C. 7:14A-l7.2, to assert a right to an adjudicatory hearing. This provision is inapplicable

A-2198-23

to the TRC's decision as the [g]rant was made pursuant to the Tidelands Act.

[(Citation omitted).]

In addition, the DEP found because Jersey Shore had

no statutory right [it] must demonstrate a "particularized property interest" of constitutional significance. N.J.S.A. 52:14B-2, -3.1(b) to (d), -3.2; In re Riverview, 411 N.J. Super. at 423.

As the Supreme Court has pointed out, "third parties generally are not able to meet . . . this rigorous review standard [particularized property interest]." In re NJPDES No. NJ0025241, 185 N.J. 474, 482 (2006); see also In re Freshwater Wetlands, 185 N.J. at 464. Courts have consistently held that proximity or any type of generalized property right shared with other property owners, such as recreational interests, traffic, views, quality of life, and property values, is insufficient to demonstrate a particularized right required to establish third-party standing for a hearing. . . .

[Jersey Shore] has challenged the [DEP]'s decision to approve the [g]rant but has not articulated any claim of a constitutionally protected individual property interest affected thereby. [Jersey Shore] alleges only generalized property rights, indistinguishable from those shared by other neighboring property owners, which do not provide constitutional standing. Property value and quality of life (use and enjoyment), . . . do not rise to a particularized property interest sufficient to create a right to an adjudicatory hearing. Likewise, the [PTD], falls short of creating a particularized property interest. Instead, the common law [PTD] ensures certain public access rights to all persons, generally.

7

[(Second alteration in original) (citation reformatted).]

Finally, the DEP noted that although Jersey Shore was not entitled to an adjudicatory hearing, Jersey Shore "did avail itself of . . . opportunities for input through the tidelands grant process . . . [as it] participated in public hearings before the [TRC] and submitted public comments in opposition."

On appeal, Jersey Shore contends "the []DEP is shirking, abdicating and ignoring their legal duty and are not stopping the TRC's approval of an unrestricted sale of the . . . [g]rant to . . . Keansburg." It asserts a "right to force the []DEP to acknowledge their statutory mandate and to abide by their statutory mandate" through an adjudicatory hearing as provided under the Administrative Procedure Act (APA), N.J.S.A. 52:14B-1 to -24.[4] Jersey Shore argues it has a

---

[4] Jersey Shore also argues a

> proposed "alternate site" for parking, Lot 3.01, is the subject matter of other litigation between Jersey Shore and . . . Keansburg wherein Jersey Shore is challenging the ownership of that area proposed for alternative parking. See Jersey Shore Beach and Boardwalk Company, Inc. v. Borough of Keansburg, Docket No.: A-621-23. If in fact Jersey Shore is successful in that litigation there will be no area available for "alternative" parking.

However, we affirmed the trial court's order that Keansburg is the owner of Lot 3.01 and Jersey Shore has no interest therein. Therefore, we do not address this argument.

A-2198-23

right to a hearing because it is a "person who has particularized property interest sufficient to require a hearing on constitutional or statutory grounds," quoting N.J.S.A. 52:14B-3.2.

Jersey Shore notes it "owns and operates [the] 'Keansburg Amusement Park' which has been an ongoing and substantial oceanfront seasonal recreational business for well over 100 years." Further, Jersey Shore contends "it owns properties in Keansburg" and asserts its "customers have long been able to use the 500[ plus] public parking spaces" to "patron[ize] . . . the Keansburg Amusement Park" and "as a point of access to the navigable waters of the Raritan Bay."

Therefore, Jersey Shore asserts it is vested:

> [A]s a business entity with status of one that has ". . . particularized property interests . . ." and/or a business entity that is ". . . directly affected by a permitting decision . . ." within the meaning of N.J.S.A. 52:14B-3.1 of the [APA] - thereby in turn qualifying [it as] a "person who has particularized property interest sufficient to require a hearing on constitutional or statutory grounds . . . [.]"

Further, Jersey Shore contends the PTD, N.J.S.A. 13:1D-150 to -156, and the public access requirements of N.J.A.C. 7:7-16.9, provide it with statutory grounds for an adjudicatory hearing "within the meaning of N.J.S.A. 52:14B-

3.2." It asserts that pursuant to "N.J.S.A. 52:14B-3.l and N.J.S.A. 52:14B-3.2," it

> has "particularized property interests" and . . . would be "directly affected" by the administrative decision to sell a [t]idelands [g]rant of the subject property to Keansburg without a [d]eed [r]estriction that would result in 500[ plus] parking spaces being permanently removed without replacement, [therefore it] most certainly had a "particularized property interest sufficient to require a hearing on . . . statutory grounds" within the meaning of the law.

In response, the DEP contends "[c]ase law has long established that the right to a trial-type adjudicatory hearing is not allowed 'except to an appellant who can show a statutory right or a constitutionally protected property interest,'" quoting In re Riverview, 411 N.J. Super. at 434. Further, it asserts N.J.S.A. 52:14B-3.1 and N.J.S.A. 52:14B-3.3(a) "prohibit[] State agencies from promulgating 'any rule or regulation that would allow a third-party to appeal a permit decision' unless 'specifically authorized to do so by federal law or State statute.'"

The DEP asserts neither the PTD, the public access requirements of N.J.A.C. 7:7-16.9, "nor the applicable tidelands statutes (N.J.S.A. 12:3-1 to -28 [and] N.J.S.A. 13:1B-13 to -13.14) provide a right to an adjudicatory hearing, and" Jersey Shore's "asserted property interests are generalized property rights

that do not rise to the level of being constitutionally significant." Keansburg offers similar arguments in response to Jersey Shore's appeal.

"An appellate court reviews a final agency decision with deference." In re Freshwater Wetlands Gen. Permit No. 16, 379 N.J. Super. 331, 341 (App. Div. 2005). "The burden of demonstrating that the agency's action was arbitrary, capricious or unreasonable rests upon the [party] challenging the administrative action." Lavezzi v. State, 219 N.J. 163, 171 (2014) (alteration in original) (quoting In re J.S., 431 N.J. Super. 321, 329 (App. Div. 2013)).

Therefore, Jersey Shore must demonstrate that the DEP's denial of its request for an adjudicatory hearing was arbitrary, capricious or unreasonable, meaning the denial:

> (1) . . . violate[d] express or implied legislative policies, that is, . . . the agency [did not] follow the law; (2) . . . the record [did not] contain[] substantial evidence to support the findings on which the agency based its action; and (3) . . . in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [Lavezzi, 219 N.J. at 171-72 (quoting In re Stallworth, 208 N.J. 182, 194 (2011)).]

"Although the APA provides a road map for navigating administrative proceedings, it does not create a substantive right to an administrative hearing."

In re Fanelli, 174 N.J. 165, 172 (2002). "[T]he right to an administrative hearing generally must be found outside the APA in another statute or constitutional provision[.]" Ibid. (alterations in original) (quoting Christ Hosp. v. Dep't of Health and Senior Servs., 330 N.J. Super. 55, 61 (App. Div. 2000)).

"[T]hird parties generally are not able to meet the stringent requirements for constitutional standing in respect of an adjudicatory hearing." In re NJPDES Permit No. NJ0025241, 185 N.J. at 482. "In determining whether administrative procedures are 'constitutionally sufficient,' New Jersey courts have used different formulas, sometimes looking to the analysis set forth by the United States Supreme Court in Mathews v. Eldridge, 424 U.S. 319, 335 (1976)." In re Freshwater Wetlands, 185 N.J. at 467 (citation reformatted). In Mathews, the United States Supreme Court held:

> [D]ue process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.
>
> [424 U.S. at 335.]

"Other times, our courts have followed the 'particularized property right' test set forth in Cunningham v. Department of Civil Service, 69 N.J. 13, 23-24 (1975)." In re Freshwater Wetlands, 185 N.J. at 467 (citation reformatted). In Cunningham, our Court explained an adjudicatory hearing is required when "[c]ontested factual issues . . . may be presented . . . which are targeted at a person" and where a "party affected by the administrative action ha[s] a safeguarded interest. Particularized property rights or other special interests must exist." 69 N.J. at 23-24 (citations omitted).

Applying these well-established principles, we conclude Jersey Shore has not carried its burden to show the DEP erroneously denied its request for an adjudicatory hearing. Jersey Shore cites to no statutory language or provision that imbue it with the right to an adjudicatory hearing.

Further, Jersey Shore's asserted vested business interest—derived from its customers' use of the parking lot as well as their access to the water—is not the "particularized property interest" required for a hearing. As the DEP explained in rejecting Jersey Shore's request for an adjudicatory hearing, Jersey Shore has a "generalized" interest "shared with other property owners." Such an interest is insufficient to confer upon it the right to an adjudicatory hearing on Keansburg's grant application under Cunningham and Mathews.

A-2198-23

Accordingly, in declining Jersey Shore's request for an adjudicatory hearing, the DEP properly applied the law and legislative policies to the evidence in the record and reasonably declined Jersey Shore's request. Under these circumstances, it is entitled to our deference.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Hanley*

Clerk of the Appellate Division

A-2198-23